## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENTINA MALLOZZI on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>IRIS USA, Inc.,<br><br>*Defendant*. | Civil Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Valentina Mallozzi ("Plaintiff"), on behalf of herself and all persons similarly situated ("the Class"), by and through her attorneys, alleges as follows upon personal knowledge as to facts pertaining to herself, and upon information and belief (based on the investigation of counsel) as to all other matters.

### NATURE OF THE ACTION

1.  This case concerns Iris Airtight Pet Food Containers that are equipped with a downward swinging latch ("Iris Containers") manufactured by Iris USA, Inc. ("Iris" or "Defendant"). As discussed below, the Iris Containers are defectively designed and manufactured and present an unreasonable danger to pets which can get trapped inside and suffocate.

2.  Specifically, the Iris Containers suffer from a design defect wherein a pet can open the container, climb inside and become trapped and suffocate (the "Defect").

3.  The Defect has caused the death of pets, including Plaintiff's kitten. Other pet deaths have been reported on the internet. As such, Iris Containers are not fit for their intended purpose, unreasonably dangerous to pets, and worthless.

4.  Iris manufactures and advertises the Iris Containers in the United States.

5.  Iris represents that the containers are safe for pets and high quality.

1

6.     Contrary to these representations, the Iris Containers suffer from the Defect in the latching and hinging mechanisms that can cause pets to become trapped and suffocate inside the containers.

7.     Iris makes no disclosure of this Defect or the danger to pets to Plaintiff and Class members.

8.     Before manufacturing, advertising and/or selling the Iris Containers, Iris failed to take appropriate steps to ensure that its products were safe for their intended use. Defendant knew or should have known that the Iris Containers were not suitable for use around small pets and that the Iris Containers suffered from the Defect.

9.     Plaintiff and Class members have also been injured at the time of sale by virtue of paying more for the Iris Containers than they would have had the existence of the Defect been disclosed, because the Iris Containers are so dangerous as to not be fit for the intended purpose, and through the death of their pets.

10.     Iris Containers with the Defect continue to be sold, posing an ongoing danger to pets.

11.     Plaintiff seeks relief for damages sustained by Plaintiff and the Class that were proximately caused by the defective Iris Containers. Plaintiff seeks relief to remedy Iris's fraudulent conduct, strict liability, failure to warn, negligence, breaches of implied warranties, and unjust enrichment. Plaintiff and the Classes additionally seek declaratory and injunctive relief, as described below.

## PARTIES

**Plaintiff**

12.     Plaintiff Valentina Mallozzi is a citizen of Pennsylvania, and a resident of Montgomery County, Pennsylvania.  As a result of Defendant's conduct as alleged herein, Plaintiff has been injured.

13.     In March 2025, Plaintiff purchased an "IRIS 30 lbs. & 11 lbs. Combo, Cat Food Storage Container, Dog Treat Container, Airtight Stackable, 2-Cup Scoop, Wheels Easy Mobility, Black" for $29.99 from Amazon.

14.     In July 2025, her kitten "Ace," who only weighed three pounds, was able to get into the Pet Food Container by opening the lid (even though it was properly locked) and then suffocated when the lid dropped down and automatically locked.

15.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Iris Containers, including, but not limited  to, the loss of her pet, emotional distress, out-of-pocket costs associated with both the purchase of the Iris Container and the loss of her pet.

16.     At no time did Defendant or any of its agents, dealers or other representatives inform Plaintiff of the Defect or the danger to her pet.

17.     On August 11, 2025, Plaintiff sent Iris a demand letter notifying it of violations of state consumer protection statutes, breaches of implied warranty, and other common law violations. Defendant was unresponsive to the demand letter.

**Defendant**

18.     Defendant Iris USA, Inc. is an Arizona corporation with its principal place of business located at 13423 W. Cactus Rd., Surprise, Arizona 85379. At all relevant times herein,

Iris designed, manufactured, marketed/advertised, sold and/or distributed Iris Containers in Pennsylvania.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has personal jurisdiction over Defendant because Iris conducts substantial business in Pennsylvania, including selling its products throughout the state and operating a manufacturing facility in Pennsylvania. Defendant also has sufficient minimum contacts with Pennsylvania and intentionally avails itself of the consumers and markets within the State of Pennsylvania through the promotion and sales of its products.

21.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because Plaintiff is a resident of this district and a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district, and because  Defendant conducts substantial business in this judicial district.

## FACTUAL ALLEGATIONS

22.     Iris sells various plastic storage containers for home, office, and pet use. This includes the Iris Containers.

23.     The Iris Containers are used to store pet food and are marketed specifically for that use.

24.     The Iris Containers come in multiple sizes, colors, and combinations, but all have

the same defective locking mechanism. The following images depict examples of these products:



25.     Iris advertises the Iris Containers as "safer" for pets and "perfect for dog food or

cat food."

26.     Iris specifically represents that the locking mechanism is designed to "Keep Paws Out: Keep pets from sneaking a second or even third breakfast with the secure locking latch."

27.     Contrary to these representations, Iris Containers pose a significant danger to pets, as illustrated by the death of Plaintiff's kitten.

28.     Specifically, the design of the lid allows the latching mechanism to be opened by a pet, which attracted to the food stored inside, will climb in and become trapped when the door automatically closes and latches.

29.     Pets, particularly cats, are able to open the downward facing latch mechanism.

30.     Once the latch is open, the pet can climb inside in order to access the food.

31.     Once the pet gets inside, the door will rebound or slam back down. When this happens the downward facing latch can catch and become locked.

32.     Because the Iris Containers are designed to be airtight, the pet will suffocate within a few minutes.

33.     Although the underside of the lid contains a small strip of foam that is perhaps intended to prevent the lid from shutting on its own, this does not always work and can wear out after minimal use.

34.     The following image shows wear grooves in the foam strip shortly after purchase:



35.     As the grooves in the foam get deeper, the Container becomes more likely to close and latch automatically.

36.     All versions of Iris Containers have the same latching mechanism and are subject to the same Defect.

37.     Iris does not disclose the Defect to potential consumers and continues to sell the defective Iris Containers.

38.     Plaintiff's tragic experience was not an isolated incident. Other consumers have reported losing pets as a result of the Iris Containers.

39.     For example:[1]

---

[1] https://www.facebook.com/PreventPetSuffocation.


**Prevent Pet Suffocation**
August 27 · 🌐

Sadly, this beautiful cat suffocated in a plastic IRIS USA Dog Food Storage Container on August 6th. Cari Corr writes, "My cat Peach opened the food storage bin herself... **See more**



 **Prevent Pet Suffocation**
February 19 · 🌐

···

This family is full of shock and grief after their rescue cat suffocated in an IRIS pet food container two days ago. Suzy Hudson writes, "This just happened to us. We had the bin in the closet & my cat got locked in the closet & then got into the bin. My 8 yr old daughter found him in there when she went to feed our cats. We are devastated. ❤️ Iris food bin. I started putting it in my closet because I saved one of my other kitties from almost suffocating in it. He must have been in the closet when I closed it & got into the food bin.

Bear aka Baby Bear would've been 5 years old this July. I run a cat sanctuary & was going to stop intake due to a horrible divorce I was enduring in 2020. But was asked to help a sick kitty (Bear's sister). When I got to the location there were 3 young adults (mom 2 siblings) & 4 under 6 weeks of age kittens needing desperate help. Bear rushed right to me when I got there. It was like he knew I was there to rescue them. He was the first one to let me rescue them. Yes, I was able to get everyone eventually.

Bear turned into an emotional support kitty for me. While I dealt with a horrible divorce. He always knew when I was having anxiety even to this day. He was the happiest kitty you ever met. He never complained, everyone in my house loved him & he loved everyone.
Sadly my 8 year old daughter found him when she & her 11 year old brother were starting inside night chores. While I prepped to go out & tend to our backyard cat sanctuary house & birds. We are so devastated. Our entire household is broken losing him. We love you Baby Bear."

Prevent Pet Suffocation has received several reports from pet owners who have lost their cats to suffocation in plastic bins for food or cat litter. Cats love to get into tight enclosed places. We remind everyone to keep all containers, appliance doors, pantry doors, and closet doors tightly closed. Keep food bags and containers off high shelves and appliances that cats can easily reach by jumping. Please share in memory of sweet Bear. Thank you.

 **Myra Mains**
I can't begin to tell you how sorry I am. My cat, Max, also suffocated in an Iris pet food container. I know the pain you're going through. I wish I had comforting words to share, but it is one of the most painful and heartbreaking things I've experien...
See more

34w   Like   Reply

13 

9



**Prevent Pet Suffocation**
January 25, 2022 · 🌐

Cats are vulnerable to pet suffocation, too. We have lost several to chip bags and other food bags, but another danger for cats is getting trapped in containers or enclosed places, which is what happened to Sheldon last week, a beautiful 2 year old Sphynx. His owner, Mike Rosol, writes, "I've been around dogs and cats since I was a young child, and Sheldon was the sweetest, most loving, friendly, innocent animal I've known. He loved everyone. He would follow any person or animal who came into the house, wanted to play with them, and loved to be picked up and held.

I got home from work late and noticed that our two cats, Sheldon and Ezra, weren't in the window, where they often watched me as I walked up to the front door. Sheldon didn't greet me at the door like he always does, but it was late, so I thought maybe he was asleep under a blanket. As a hairless Sphynx, he liked to burrow under blankets even when the house was warm. The first thing I did was to put their wet food down. When Sheldon didn't show up with his noisy meows for food, I started getting worried. Sheldon was always loud and at my feet as soon as the food can cracked if not an hour before. I did two thorough searches of the house. At that point I was afraid that he snuck past my feet at the door and was outside in the snow, but I decided to do one more house search.

We kept our bags of dry food, which we rarely use, in a large Iris brand plastic bin with a latching top. It is a common bin sold at places like Chewy's. We got the bin so that the cats wouldn't tear into their food bags (which they both do) when I'm at work. We also thought it would ensure that the food didn't attract insects or rodents. Somehow, while I was at work, poor little Sheldon opened the latch, got inside the container, and locked himself in. He suffocated in there. Based on how I found him, I think it happened fairly early in the day. I found him when I bumped into the container in my final search of the house before I was going to look outside. When I bumped the container, it felt too heavy for the amount of food I knew was in it. By that point in searching, I already had the feeling something was very wrong, and I knew in my gut, before I even got it all the way open what happened. As a Sphynx, Sheldon was always very warm to the touch. My heart and stomach just fell as I saw him, then touched his stiff, cold little body. The image and the feeling when I picked him up is seared into my mind, and not the memory I want to have of him.

40.     These complaints are just a sampling of what is available online.

41.     On information and belief, Iris monitors posts about its products on social media and other forums and many of these consumers report having contacted Iris directly about the Defect.

42.     In March of 2025, the Center for Pet Safety ("CPS") put out a report titled "Pet Food Container Evaluation to Assess Pet Suffocation Risk."[2]

---

[2] Available at https://www.centerforpetsafety.org/wp-content/uploads/2025/03/Pet-Food-Container-Evaluation_CenterforPetSafety_2025.pdf.

43.     The report described the dangers of poorly designed food containers: "CPS consulted cat expert Ingrid King to discuss why cats are attracted to boxes. Ms. King shared that cats instinctually seek enclosed spaces for comfort, stress relief, and in some cases, temperature regulation. 'Some cats are obsessed with plastic and that may explain why they play with the latch and work to open the latched container,' and she elaborated, 'it would only take 3-5 minutes for a cat to suffocate in a closed container.'"

44.     This is common industry-wide knowledge that would certainly have been known by a leading pet food container manufacturer such as Iris.

45.     The CPS report goes on to call out Iris Containers as particularly dangerous:



**Amazon: Iris Airtight Pet Food Container**

- We have purposefully called out the retailer source for this Iris container. The reason is due to the hinged latch location on the **lid** of this container. This latch design of Iris container is sold through many retail and online outlets.
- While this lid is lightweight, in testing, this lid re-latched when the lid was forcefully shut or when rebounding.
- In our assessment, this design significantly increases the risk of pet suffocation if the container is breached due to the possibility of the lid closing and/or re-latching.




46.     The report goes on to note other brands that use designs that are considerably safer for pets.

47.     Iris has been aware of the Defect and the dangers posed to consumers and their pets since the release of the product.

48.     As a leading manufacturer of pet food containers, Iris is undoubtedly aware of the concern for possible suffocation and would have conducted prelease testing specifically related to the latching mechanism, the ability for pets to open it, and the possibility of pets getting trapped inside. Furthermore, the Iris Containers are advertised as "airtight" so Iris is aware that if a pet gets trapped inside it will suffocate to death.

49.     Iris has further been put on notice of the Defect from numerous consumer complaints made online on websites it monitors and made directly to Iris.

50.     Despite this, Iris continues to sell Defective Iris Containers without disclosing the Defect and dangers to consumers.

51.     Iris could easily disclose the Defect on its product pages, on the container itself, the packaging, etc. but chooses not to.

52.     Indeed, Iris actively conceals the Defect by not only failing to disclose it, but also representing the Iris Containers as "safer" for pets and "perfect for dog food or cat food." And that Iris Containers will "Keep Paws Out: Keep pets from sneaking a second or even third breakfast with the secure locking latch."

53.     Class members have been harmed in at least the following ways: by purchasing Iris Containers that are too dangerous for their intended use and thus worthless, for overpaying for Iris Containers, through the loss of their pets, emotional distress, and out of pocket expenses related to the deaths of their pets.

## TOLLING OF THE STATUTE OF LIMITATIONS

54.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and members of the Class could not have reasonably discovered the true, latent defective nature of the Defective Iris Containers.

55.     Defendant was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of Iris Containers. As a result of the active concealment by Defendant, any and all applicable  statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ALLEGATIONS

56.     This action is brought on behalf of Plaintiff, individually and as a class action, pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and/or 23(b)(3), on behalf of a nationwide class of consumers.  Specifically, the  Nationwide Class consists of:

**Nationwide Class**
All persons in the United States who have purchased an Iris Container.

57.     Alternatively, or in addition to the nationwide Class claims, Plaintiff brings these claims under FED. R. CIV. P. 23(a), 23(b)(2) and/or 23(b)(3) on behalf of herself and on behalf  of a Subclass of individuals residing in Pennsylvania where she resides. The State Subclass is defined as:

**Pennsylvania Purchaser Subclass**
All persons in Pennsylvania who purchased an Iris Container.

58.     Plaintiff reserves the right to re-define the Classes prior to class certification.

59.     The rights of each member of the Classes were violated in a similar fashion based upon Defendant's uniform actions.

60.    This action has been brought and may be properly maintained as a class action for the following reasons:

a.    <u>Numerosity</u>: Members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that at least thousands of people have purchased Iris Containers in both Pennsylvania and the United States and thus the Class and Subclass are sufficiently numerous as to make joinder impracticable, if not impossible. The precise number of Class members is unknown to Plaintiff.

b.    <u>Existence and Predominance of Commons Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Classes. These questions predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

i.    Whether Defendant's Iris Containers were defectively designed for their intended purpose.

ii.    Whether Defendant's Iris Containers were fit for their intended purpose.

iii.    Whether Defendant failed to warn consumers that its Iris Containers were not properly tested during the design and development process.

iv.    Whether Defendant made fraudulent, false, deceptive, and/or misleading statements in connection with the sale of its Iris Containers in its product literature, including those relating to standards and reliability.

v.    Whether Defendant omitted material information when it sold Iris Containers.

vi.    Whether Defendant exercised reasonable care in the design, manufacture, and testing of the Iris Containers.

vii.    Whether Defendant owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Iris Containers.

viii.    Whether Defendant breached its duty to Plaintiff and the Class by designing, manufacturing, advertising, and selling to Plaintiff and Class members defective Iris Containers.

ix.    Whether Defendant knew or should have known of the defective nature of the Iris Containers.

x.    The appropriate nature of class-wide equitable relief.

xi.    Whether the Defendant should be required to notify all Class members about the Defect and to recall the Iris Containers.

These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Classes.

c.    <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class since Plaintiff and all members of the Class own or owned Defendant's defective Iris Containers. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries arising out of Defendant's wrongful conduct by, *inter alia,* paying more for the Iris Containers than they otherwise would have had they been aware of the Defect and incurred out of pocket expenses and suffered emotional distress related to the deaths of their pets as a result of the defective Iris Containers. Had this material information been disclosed to Plaintiff and Class members, they would not have purchased the Iris Containers (or, at a minimum, would have paid substantially less for them). Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

d.    <u>Adequacy</u>: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class that she seeks to represent; she has retained counsel competent and highly experienced in complex class action litigation and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

e.    <u>Superiority</u>: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

f.    <u>Ascertainability</u>: Class members are readily ascertainable, and can be identified by Defendant's records and the records of the limited universe of retailers that sell and distribute Iris Containers. Additionally, the Iris Containers are readily recognizable from both labeling and style, making it easy for determine whether someone has one.

g.    Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW
Pa. Stat. Ann. § 201-1, *et seq*.
(On Behalf of the Pennsylvania Subclass)**

61.     Plaintiff incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

62.     Plaintiff brings this cause of action individually and on behalf of the Pennsylvania Subclass.

63.     In conducting trade and commerce with Plaintiff and the Pennsylvania Subclass, Defendant has violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") by, without limitation, engaging in unfair or deceptive acts or practices by: representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities; representing that goods or services are of a particular standard, quality or grade; advertising goods or services with intent not to supply; and engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. Such acts and practices are in contravention of 73 P.S. §201-2.

64.     Defendant's unfair and deceptive acts and practices include mispresenting or concealing material facts concerning the nature of Iris Containers and the Defect.

65.     Iris Containers are "goods" under the UTPCPL.

66.     But for Defendant's unfair and deceptive acts, Plaintiff and Members of the Pennsylvania Subclass would not have purchased the Iris Containers or would have paid significantly less to do so.

67.     Defendant's violations of the UTPCPL present a continuing risk and detriment to Plaintiff, Members of the Pennsylvania Subclass, and members of the public at large. Defendant's unlawful acts and practices harm the public interest.

68.     Plaintiff and Members of the Pennsylvania Subclass have been harmed by Defendant's violations of the UTPCPL and no adequate remedy has yet been provided.

69.     For Defendant's violations of the UTPCPL, Plaintiff and Members of the Pennsylvania Subclass seek damages; exemplary damages; an order enjoining Defendant's unfair, unlawful, deceptive, and unconscionable acts and practices; attorneys' fees; costs; restitution; disgorgement of funds; and any other just and appropriate relief available under the UTPCL.

## COUNT II
## COMMON LAW FRAUD
### (On Behalf of the Nationwide Class and the Pennsylvania Subclass)

70.     Plaintiff incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class. In alternative, Plaintiff brings this claim on behalf of the Pennsylvania Subclass.

72.     Defendant manufactured, designed, advertised, and sold the Iris Containers in all 50 states. Iris also drafted, distributed, and disseminated the same advertising materials in all 50 states, including on the website it maintains to advertise its products. Those materials misrepresented, failed to disclose, and omitted any mention of the Defect or its danger to pets.

73.     Additionally, Defendant made other material misrepresentations of facts regarding the safety, quality, durability, and characteristics of the Iris Containers and/or fraudulently concealed from and/or intentionally failed to disclose the Defect to Plaintiff and Class members.

74.     Defendant knew that the Iris Containers suffered from an inherent defect, specifically that they were dangerous to pets which can get inside, become trapped, and suffocate, and thus was defectively designed and were not suitable for their intended use. Iris knew this at the time of sale.

75.     Defendant concealed from and failed to disclose to Plaintiff and Class members the defective nature of the Iris Containers.

76.     The Defect is latent and not something Plaintiff and Class members in the exercise of reasonable diligence could have discovered independently prior to purchase. The Defect is incapable of becoming exposed by reasonable inspection by purchasers.

77.     Defendant knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiff and Class members.

78.     Defendant was under a duty to Plaintiff and Class members to disclose the defective nature of the Iris Containers because Defendant was in an exclusive and superior position to know the true state of facts about the Defect; intentionally and actively concealed the Defect; and made incomplete or partial representations regarding the Iris Containers while withholding material facts from Plaintiff and the Class members.

79.     Defendant had the capacity, and did, deceive Plaintiff and Class members into believing that the Iris Containers they purchased were of high quality and safe for pets.

80.     The facts misrepresented, concealed, or not disclosed by Defendant to Plaintiff and Class members were material in that a reasonable person would have considered them to be important in deciding whether to purchase the Iris Containers, or pay a lesser price for them, and were likely to deceive a reasonable person.

81.     Had Plaintiff and Class members known about the defective nature of the Iris Containers, they would not have purchased it or would have paid less for them.

82.     Defendant misrepresented, concealed, or failed to disclose the true nature of the Defect in order to induce Plaintiff and Class members to act thereon. Plaintiff and the other Class members justifiably relied on Defendant's misrepresentations omissions to their detriment. This detriment is evident from Plaintiff's and Class members' purchases of the defective Iris Containers.

83.     Defendant continues to conceal the true nature of the Defect today.

84.     As a direct and proximate result of Defendant's misconduct, Plaintiff and Class members have suffered and will continue to suffer actual damages.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### (On Behalf of the Nationwide Class and the Pennsylvania Subclass)

85.     Plaintiff incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

86.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class. In alternative, Plaintiff brings this claim on behalf of the Pennsylvania Subclass.

87.     As set forth herein, Defendant routinely and uniformly represented that the Iris Containers were reliable, durable, of high quality, and safe for pets. To communicate these representations and to convince Plaintiff and members of the Classes, Defendant supplied information, including through its website, the website of its authorized retailers, its printed materials, and its point-of-sale documentation. Defendant knew, or should have known, that this information was false and/or misleading and fraught with material omissions.

88.    The misrepresentations concerned material facts that influenced Plaintiff's and members of the Class's decisions to purchase the Iris Containers.

89.    Defendant negligently made the misrepresentations and omissions with the understanding the Plaintiff and Class members would rely on them.

90.    Plaintiff and members of the Classes reasonably, justifiably, and detrimentally relied on the misrepresentations and omissions, and, as a direct and proximate result thereof, have and will continue to suffer damages in an amount to be determined at trial.

**COUNT IV**
**STRICT PRODUCTS LIABILITY - DESIGN DEFECT**
**(On Behalf of the Pennsylvania Subclass)**

91.    Plaintiff incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

92.    Under Pennsylvania law, a person or entity engaged in the business of selling a product has a duty to design, manufacture, and market products that reach the user or consumer "without substantial change in the condition in which [they are] sold," and that are free from "a defective condition unreasonably dangerous to the consumer or [the consumer's] property." *Tincher v. Omega Flex, Inc*., 104 A.3d 328, 383 (Pa. 2014) (citing Restatement (Second) of Torts § 402A(1)).

93.    Plaintiff and Class Members purchased Iris Containers which were manufactured, distributed or sold by Defendant.

94.    Defendant placed the Iris Containers into the stream of commerce in a defective condition unreasonably dangerous to the user and to the user's property.

95.    Iris Containers were defectively designed in that the latching mechanism can be opened by pets and then trap the pets in the container where they could then suffocate.

96.     The Iris Containers were defective because

i.      the danger it presented, upon normal use, was unknowable and dangerous beyond the reasonable consumer's contemplations; and/or

ii.     a reasonable person would conclude that the probability and seriousness of harm caused by the product outweighed the burden or cost of taking precautions to prevent that harm.

97.     The Defect existed at the time it left Defendant's control.

98.     The Iris Containers reached Plaintiff and Class Members without substantial change in their defective condition.

99.     As a direct and proximate result of the Defect, Plaintiff and Class Members suffered damage to their personal property.

100.    Specifically, Plaintiff's kitten was attracted by the food stored in the Iris Container, opened the lid, entered the container, and became trapped when the door closed and latched behind it, causing the kitten to suffocate and die.

101.    Upon information and belief, the design of Iris Containers lacked adequate safety features that would have prevented or mitigated the hazard.

102.    First, the downward facing latch is prone to being opened by pets and then can latch itself when the top closes.

103.    The product relies on a foam liner surrounding the lid to provide rebound and separation between the lid and the container body. However, the liner material is insufficiently resilient and becomes permanently compressed after repeated use—or, in some instances, arrives to the end user already compressed—thereby eliminating the intended rebound effect. As a result, once the lid is unlatched, it can reseal and latch shut under its own weight or minimal external pressure.

104.    The design of the latch, the use of inadequate liner material, and the absence of a more reliable rebound mechanism, renders Iris Containers design unreasonably dangerous to consumers' pets.

105.    As a result of Defendant's conduct, Plaintiff suffered damages, including the loss of personal property and other compensable injuries.

### COUNT V
### STRICT PRODUCTS LIABILITY - FAILURE TO WARN
### (On Behalf of the Pennsylvania Subclass)

106.    Plaintiff incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

107.    Under Pennsylvania law, a product is defective for strict-liability purposes if it is distributed without sufficient warnings to notify the ultimate user of the dangers inherent in its use. *See Mackowick v. Westinghouse Elec. Corp.*, 575 A.2d 100, 102 (Pa. 1990). A manufacturer's warnings must be directed to the understanding of the intended user and must adequately inform users of any nonobvious dangers inherent in the product's ordinary use. *Id.*

108.    Defendant had a duty to warn purchasers of the suffocation risks of its Iris Containers in an effective manner, placed in a way calculated to give reasonable fair warning to consumers.

109.    Defendant sold the Iris Containers in a defective condition unreasonably dangerous to the user and the user's property.

110.    The Iris Containers were defective because they lacked adequate warnings about the risk of pet suffocation associated with its design.

111.    Defendant failed to warn consumers that pets could open they become trapped inside and suffocate due to the airtight seal created when the lid re-closed under its own weight.

112.    The Defect and the absence of adequate warnings existed when the product left Defendant's control.

113.    The Defect and the absence of adequate warnings directly and proximately caused harm to Plaintiff's property, including the death of Plaintiff's pet.

114.    Had the Iris Containers had an adequate warning, Plaintiff and Class members would have read and heeded it.

115.    Had adequate warnings been provided, Plaintiff and Class members would have taken precautions to prevent the pet from accessing the Iris Container or would have purchased a different product.

116.    A warning directed to the understanding of an ordinary consumer—such as a clearly visible sticker or printed notice on the container would have been sufficient to alert users to the unobvious danger that small pets could unlatch the lid and become trapped inside.

117.    Such a warning would have imposed a minimal burden on Defendant while substantially reducing or eliminating the risk of harm.

118.    An adequate warning could have read, for example:

"WARNING: SMALL PETS CAPABLE OF UNLATCHING LID – AIRTIGHT SEAL

MAY CAUSE SUFFOCATION."

119.    As a result of Defendant's failure to warn, Plaintiff suffered damages, including the loss of personal property and other compensable injuries.

## COUNT VI
## NEGLIGENT DESIGN
### (On Behalf of the Pennsylvania Subclass)

120.    Plaintiff incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

121.   In products-liability claims sounding in negligence, Pennsylvania follows the Restatement (Second) of Torts. *Smith v. Howmedica Osteonics Corp*., 251 F. Supp. 3d 844, 852–53 (E.D. Pa. 2017). Negligent design claims are governed by § 398 of the Restatement (Second) of Torts. *Lance v. Wyeth*, 85 A.3d 434, 445 n.13 (Pa. 2014).

122.   To state a viable claim for negligent design, a plaintiff must allege facts showing that the defendant failed to exercise reasonable care in the adoption of a safe design. *Smith*, 251 F. Supp. 3d at 854.

123.   Defendant owed a duty of reasonable care to Plaintiff and Pennsylvania Subclass members to design and manufacture Iris Containers to be reasonably safe for their intended and foreseeable uses.

124.   Defendant breached that duty by designing the Iris Containers with a latching mechanism that could be easily opened by pets and would automatically close and seal when a pet entered, trapping the animal inside an airtight environment.

125.   Defendant's design created a foreseeable and unreasonable risk of suffocation to pets.

126.   Defendant knew or, in the exercise of reasonable care, should have known that Iris Containers posed a danger to pets.

127.   Defendant's failure to exercise reasonable care in the design of the Iris Containers was the direct and proximate cause of harm to Plaintiff's property, including the death of Plaintiff's pet.

128.   As a result of Defendant's negligence, Plaintiff has suffered damages, including the loss of personal property and other compensable injuries.

## COUNT VII
## NEGLIGENT FAILURE TO WARN
### (On Behalf of the Pennsylvania Subclass)

129.    Plaintiff incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

130.    Claims for negligent failure to warn are governed by § 388 of the Restatement (Second) of Torts. *Baldino v. Castagna*, 478 A.2d 807, 810 (Pa. 1984).

131.    A Plaintiff states a viable claim for negligent failure to warn by alleging facts showing that the defendant "fail[ed] to exercise reasonable care to inform those for whose use the product is supplied of the facts which make it likely to be dangerous." *Id.*

132.    Defendant owed a duty of reasonable care to provide adequate warnings and instructions to the intended users of the Iris Containers regarding hazards associated with its foreseeable use, including the risk that small pets could open the container and become trapped inside.

133.    Defendant breached that duty by failing to exercise reasonable care to warn consumers about the dangers to pets.

134.    Defendant knew or, in the exercise of reasonable care, should have known that the Iris Containers presented a serious risk to pets.

135.    Defendant's failure to provide adequate warnings directly and proximately caused harm to Plaintiff's property, including the death of Plaintiff's pet.

136.    Had adequate warnings been provided, Plaintiff and Pennsylvania Class members would have read and heeded them and would have taken precautions to prevent pets from accessing the Iris Containers or would have selected an alternative product.

137.    An adequate warning could have read, for example: "WARNING: SMALL PETS CAPABLE OF UNLATCHING LID – AIRTIGHT SEAL MAY CAUSE SUFFOCATION."

138.    As a result of Defendant's negligent failure to warn, Plaintiff suffered damages, including the loss of personal property and other compensable injuries.

**COUNT VIII**
**BREACH OF IMPLIED WARRANT OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class and the Pennsylvania Subclass)**

139.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

140.    Plaintiffs bring this claim individually and on behalf of members the Nationwide Class and alternatively the members of the Pennsylvania Subclass.

141.    Defendant is a "merchant" as defined under the Uniform Commercial Code ("UCC").

142.    The Iris Containers are "goods" as defined under the UCC.

143.    A warranty that the Iris Containers were of merchantable quality and condition is implied by law in transactions for the purchase of Iris Containers. Defendant impliedly warranted that the Iris Containers were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and substantial freedom from defects.

144.    The Iris Containers, when sold, and at all times thereafter, were not of merchantable quality or condition and are not fit for the ordinary purpose for which they are used. Specifically, the Iris Containers are inherently defective in that pets can get inside the containers, become trapped, and suffocate, due to a common defect. The Defect renders Iris Containers

unmerchantable, as they are unreliable, unsafe, partially or fully inoperable, and not substantially free from defects.

145.    Defendant was provided notice of the issues complained of herein by complaints from consumers (including those posted online and those made directly to Defendant), the presuit demand letter sent by Plaintiff, and the instant lawsuit, within a reasonable amount of time.

146.    Plaintiff and Class members have had sufficient direct dealings with either Defendant or its agents (e.g., customer service) to establish privity of contract between Defendant on one hand and Plaintiff and each of the Class members on the other. Nonetheless, privity is not required here because Plaintiff and the Class members are intended third-party beneficiaries of contracts between Defendant and its retailers, specifically of Defendant's implied warranties. The retailers were not intended to be the ultimate consumers of the Iris Containers.

147.    As a direct and proximate result of the breach of the implied warranties, Plaintiff and Class members were injured and are entitled to damages.

<u>**COUNT IX**</u>
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and the Pennsylvania Subclass)**

148.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

149.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Purchaser Class. In alternative, Plaintiff brings this claim on behalf of the Pennsylvania Purchaser Subclass.

150.    Substantial benefits have been conferred on Defendant Iris by Plaintiff and the Classes by purchasing the Iris Containers, and Iris knowingly and willingly accepted and enjoyed those benefits.

28

151.    Defendant knew or should have known that payments received from Plaintiff and the Classes for the Iris Containers were paid with the expectation that the Iris Containers would perform as represented.

152.    Defendant's retention of these benefits is inequitable.

153.    Plaintiff and the Classes are entitled to recover from Iris all amounts wrongfully collected and improperly retained by Iris, plus interest.

154.    As a direct and proximate cause of Iris's wrongful conduct and unjust enrichment, Plaintiff and the Classes are entitled to an accounting, restitution, attorneys' fees, costs and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests, on behalf of herself and members of the Classes, that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue an order certifying the Classes as defined above and designating Plaintiff's counsel as counsel for the Classes;

B.    award all actual, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages to which Plaintiff and Class members are entitled;

C.    award pre-judgment and post-judgment interest on such monetary relief;

D.    grant appropriate injunctive and/or declaratory. Including ordering Defendant to cease the sale of defective Iris Containers, inform all current owners about the Defect, as well as any other relief the Court may deem reasonable;

29

E.    award reasonable attorneys' fees and costs; and grant such further and other relief that this Court deems appropriate.

**<u>JURY DEMAND</u>**

Plaintiff, on behalf of herself and the Classes, demands a trial by jury on all issues so triable.

Dated: October 22, 2025                    Respectfully submitted,

*/s/   Steven A. Schwartz*
Steven A. Schwartz (PA ID No. 50579)
Alex M. Kashurba (PA ID No. 319003)
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
sas@chimicles.com
amk@chimicles.com

*Counsel for Plaintiff and the Putative Class*