**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VALENTINA MALLOZZI, on behalf of herself and others similarly situated,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **IRIS USA, INC.,** <br><br> **Defendant.** | **CIVIL ACTION NO. 25-6035** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                   **July 22, 2026**

Plaintiff Valentina Mallozzi filed this proposed class action on behalf of herself and on behalf of others similarly situated. Mallozzi alleges that Defendant Iris USA, Inc. ("Iris") produces and markets a defectively designed and manufactured pet food container, the Iris Airtight Pet Food Containers ("Containers"). Mallozzi asserts claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I), common-law fraud (Count II), negligent misrepresentation (Count III), products-liability theories (Counts IV–VII), breach of implied warranty (Count VIII), and unjust enrichment (Count IX). Iris has filed a Motion to Dismiss Counts I, II, and III under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Iris also moves to dismiss claims for emotional distress or consortium-related damages.

## I.    BACKGROUND

For the purposes of the Motions to Dismiss, the Court takes all of Plaintiffs' allegations in the Complaint as true.[1]

---

[1] Compl. [Doc. No. 1].

Defendant Iris is a corporation that sells plastic containers for home, office, and pet use, and it specifically markets certain plastic containers for storing pet food.[2] The containers are sold in a variety of colors, sizes, and combinations, but all versions of the containers share the same form of locking mechanism.[3] Iris advertised the containers as "safer" for pets and "perfect for dog food or cat food."[4] It represented the latching mechanism of the containers as designed to "Keep Paws Out: Keep pets from sneaking a second or even third breakfast with the secure locking latch."[5]

Plaintiff purchased an Iris plastic container product in March of 2025 for $29.99.[6] She used the container to store pet food for her kitten, Ace.[7] In July 2025, Ace, who weighed three pounds, opened the lid to the container, despite it being properly locked, and subsequently was trapped in the container and suffocated when the lid dropped down and automatically locked.[8] The downward-facing latching mechanism is capable of being opened by a pet who may be attracted to pet food stored inside.[9] Once the latch is opened, a pet may get inside and the door may rebound or close, causing the downward facing latch to catch and lock the container.[10] The containers are designed to be airtight, which can cause suffocation of a trapped pet.[11]

---

[2] *Id.* ¶¶ 22–23.

[3] *Id.* ¶¶ 24, 36.

[4] *Id.* ¶ 25.

[5] *Id.* ¶ 26.

[6] *Id.* ¶ 13. The product is identified as an "IRIS 30 lbs. & 11 lbs. Combo, Cat Food Storage Container, Dog Treat Container, Airtight Stackable, 2-Cup Scoop, Wheels Easy Mobility, Black." *Id.* ¶ 13.

[7] *Id.* ¶¶ 13, 14, 23.

[8] *Id.* ¶ 14.

[9] *Id.* ¶¶ 28–29.

[10] *Id.* ¶¶ 30–31.

[11] *Id.* ¶ 32.

The lid contains a foam strip on its underside, which Plaintiff claims "is perhaps intended to prevent the lid from shutting on its own," but this prevention mechanism may wear out after minimal use.[12]

Plaintiff alleges that several other purchasers have suffered pet deaths from Iris pet containers.[13] In a Prevent Pet Suffocation Facebook group, several users posted regarding pet death resulting from suffocation in Iris containers. An August 27 post shares a photo of a cat and says "this beautiful cat suffocated in a plastic IRIS USA Dog Food Storage Container on August 6" and attests that the cat opened the food storage bin.[14] A February 19 post states that a rescue cat suffocated in an Iris pet food container.[15] A comment on the post states that "My cat, Max, also suffocated in an Iris pet food container."[16] Finally, a post from January 25, 2022, shared that a cat whose food was stored in an Iris pet food container "opened the latch, got inside the container, and locked himself in. He suffocated in there."[17] These complaints represent "a sampling of what is available online."[18] Plaintiff alleges that "Iris monitors posts about its products on social media and other forums and many of these consumers report having contacted Iris directly about [the issue]."[19]

In March of 2025, a report titled "Pet Food Container Evaluation to Assess Pet Suffocation Risk" was published by the Center for Pet Safety ("CPS").[20] The report details the

---

[12] *Id.* ¶ 33.

[13] *Id.* ¶¶ 38–39.

[14] *Id.* ¶ 39. This post does not include a year accompanying the date. At the latest, this year could be 2025.

[15] *Id.* ¶ 39. This post does not include a year accompanying the date. At the latest, this year could be 2025.

[16] *Id.* ¶ 39.

[17] *Id.* ¶ 39.

[18] *Id.* ¶ 40.

[19] *Id.* ¶ 41.

[20] *Id.* ¶ 42.

potential risks of pet food containers to cats and other pets. It notes that cats may be drawn to such containers and Plaintiff alleges that such information "is common industry-wide knowledge that would certainly have been known by . . . Iris."[21] The report identifies Iris products as posing an increased risk of suffocation, particularly as compared to other products on the market.[22]

Plaintiff claims that "Iris has been aware of the [claimed issues with the latch design] and the dangers posed to consumers and their pets since the release of the product."[23] Plaintiff alleges that Iris is aware of consumer complaints made online and directly to the company itself.[24]

Iris continues to sell the containers, and it does not provide a notice or disclosure of any suffocation risk on the container, packaging, or in its marketing.[25]

Plaintiff brings the instant lawsuit as a proposed class action on behalf of a nationwide class of people who purchased Iris containers.[26] She also proposes, as an alternative or addition to the nationwide class, a Pennsylvania purchaser subclass on behalf of all persons in Pennsylvania who purchased an Iris container.[27] Plaintiff alleges violation of the Pennsylvania UTPCPL on behalf of the Pennsylvania subclass, common law fraud on behalf of the nationwide class and Pennsylvania subclass, negligent misrepresentation on behalf of the nationwide class and Pennsylvania subclass, strict products liability for a design defect on behalf of the Pennsylvania subclass, strict products liability for failure to warn on behalf of the Pennsylvania subclass, negligent design on behalf of the Pennsylvania subclass, negligent failure to warn on

---

[21] *Id.* ¶¶ 43–44.

[22] *Id.* ¶ 45.

[23] *Id.* ¶ 47.

[24] *Id.* ¶ 49.

[25] *Id.* ¶¶ 50–51.

[26] *Id.* ¶ 56.

[27] *Id.* ¶ 57.

behalf of the Pennsylvania subclass, breach of implied warrant of merchantability on behalf of the nationwide class and Pennsylvania subclass, and unjust enrichment behalf of the nationwide class and Pennsylvania subclass.

Iris filed a partial Motion to Dismiss,[28] which is now fully briefed and ripe for review.[29] For the reasons stated herein, the Motion will be granted in part and denied in part.

## II.    LEGAL STANDARD

Iris moved to dismiss pursuant to Rule 12(b)(6).[30] To withstand a motion to dismiss for 12(b)(6), a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] The reviewing court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[33] Yet, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" must be disregarded.[34] Courts consider the "complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.[35]

---

[28] Mot. to Dismiss [Doc. No. 11].

[29] Resp. Opp. Mot. to Dismiss [Doc. No. 15]; Reply Supp. Mot. to Dismiss [Doc. No. 16].

[30] Mot. to Dismiss [Doc. No. 11].

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[32] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

[33] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

[34] *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

[35] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

When alleging fraud or mistake, the plaintiff must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[36] This standard requires the plaintiff to state "with particularity the circumstances constituting fraud or mistake."[37] Pleading fraud requires particularized allegations of the circumstances of the fraud, including a specific false representation, knowledge of its falsity, intent, reliance, and damages.[38] Rule 9(b) requires a complaint be pled with precision, but it does not require a plaintiff to plead evidence. A plaintiff must plead the circumstances of the alleged fraud with enough specificity to substantiate the claim.[39] Rule 9(b) may be satisfied by pleading the date, place, or time of the alleged fraud or by otherwise injecting precision and substantiation into the allegations.[40] A complaint must identify the "precise misconduct" at issue to satisfy Rule 9(b).[41]

## III.   DISCUSSION

### A.   Whether Rule 9(b) Heightened Pleading Requirements Apply

The Court must first determine whether Counts I, II, and III are subject to Rule 9(b)'s heightened pleading standard. Rule 9(b) exists to give defendants notice of the precise misconduct alleged, protect reputation from vague accusations of fraud, and reduce suits brought mainly to extract settlement value.[42] The Court looks not just to the title of a claim, but to the

---

[36] Fed. R. Civ. P. 9(b).

[37] *Id.*

[38] *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006).

[39] *Lum v. Bank of America*, 361 F.3d 217, 223–24 (3d Cir. 2004).

[40] *Id.* at 224.

[41] *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

[42] Fed. R. Civ. P. 9(b); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (explaining Rule 9(b)'s notice, reputation-protection, and strike-suit purposes).

factual allegations in a claim to determine whether it is a fraud or mistake claim subject to Rule 9(b).[43] Each count must be analyzed to determine whether heightened pleading standards apply.

### 1.      Count II – Common Law Fraud

Count II alleges common law fraud. This Count alleges that Iris distributed advertising material to all fifty states, failed to disclose the alleged defects, and made material representations regarding the safety, quality, durability, and characteristics of the containers.[44] This Count, by its title and its content, alleges misrepresentations that constitute fraudulent action and is subject to Rule 9(b) pleading requirements.

### 2.      Count I – Violation of UTPCPL

Count I alleges that Iris "engag[ed] in unfair or deceptive acts or practices by: representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities [that they do not have]; represent[ed] that goods or services are of a particular standard, quality or grade [that are of another]; advertis[ed] goods or services with intent not to supply [them as advertised]; and engag[ed] in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[45] Specifically, the count alleges that Iris misrepresented or concealed material facts about its containers and the alleged defect in the lid and latching mechanism.

The UTPCPL claim rests on the same factual theory as Plaintiff's common law fraud claim, i.e., that Iris engaged in deceptive conduct by misrepresenting or concealing material facts

---

[43] *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996) (holding that claims sounding in fraud must satisfy Rule 9(b)); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir. 1992); *Travelers Indem. Co. v. Cephalon, Inc.*, 620 Fed. Appx. 82, 85 n.3 (3d Cir. 2015) (holding that claims alleging fraudulent activity, including negligent misrepresentation, were subject to Rule 9(b)).

[44] Compl. ¶¶ 72-73 [Doc. No. 1].

[45] *Id.* ¶ 63.

that it knew about the nature of the containers and the alleged defect.[46] These claims allege violations of 73 P.S. §§ 201-2(4)(v), (vii), (ix), and (xxi).

The UTPCPL must be liberally construed in order to give effect to its purpose of equalizing disparate positions of consumers and sellers in the marketplace.[47] Therefore, "a plaintiff need not invoke a particular subsection of the UTPCPL to survive a motion to dismiss; general averments of prohibited conduct, together with justifiable reliance and resultant harm, will suffice."[48] However, Plaintiff recites certain sections of the UTPCPL, so this Court must evaluate each in turn.

Allegations of violations of 73 P.S. §§ 201-2(4)(v)[49] and (vii)[50] do not include an intent requirement, and they do not necessarily sound in fraud. Allegations of violations of § 201-2(4)(ix) clearly sound in fraud because it requires advertisement with a corresponding intent not to sell advertised goods or services as advertised.[51]

Section 201-2(4)(xxi) is a "catchall provision" that does not require a plaintiff establish proof of the actor's state of mind.[52] In other words, a showing of fraud is not necessary to establish a UTPCPL violation under the catchall provision. However, Rule 9(b)'s heightened

---

[46] Compl. ¶ 63 [Doc. No. 1] (alleging violation of the UTPCPL in part because Iris "advertis[ed] goods or services with intent not to supply").

[47] *See Commw., by Creamer v. Monumental Properties, Inc.*, 329 A.2d 812, 817–18 (Pa. 1974).

[48] *Weinberg v. Legion Athletics, Inc.,* 683 F. Supp. 3d 438, 449 (E.D. Pa. 2023) (citing *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 400 (E.D. Pa. 2021) (citing *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (2004))).

[49] "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have . . . ." 73 PA. CONS. STAT. § 201-2(4)(v). To state a claim for a violation of § 201-2(4)(v), a plaintiff must allege 1) "a defendant's representation is false"; (2) "it actually deceives or has a tendency to deceive"; and (3) "the representation is likely to make a difference in the purchasing decision." *Fay v. Erie Ins. Group*, 723 A.2d 712, 714 (Pa. Super. Ct. 1999).

[50] "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another . . . ." 73 P.S. § 201-2(4)(vii).

[51] *See Karlsson v. F.D.I.C.*, 942 F. Supp. 1022, 1023 (E.D. Pa. 1996), *aff'd,* 107 F.3d 862 (3d Cir. 1997).

[52] *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646–50 (Pa. 2021).

pleading standard applies when a claim under the UTPCPL is based on fraudulent misrepresentations.[53] While claims under the UTPCPL catchall provision are not conclusively evaluated under Rule 9(b),[54] the Court must look to the content of the allegations to make the determination.

On the whole of the UTPCPL claim, Plaintiff does allege an intentional element to the false representations. Accordingly, Plaintiff's claim for common law fraud is factually identical to her UTPCPL claim. Thus, the UTPCPL claim sounds in fraud and must meet Rule 9(b)'s heightened pleading requirements.

### 3.   Count III – Negligent Misrepresentation

Count III alleges negligent misrepresentation. Stating a claim of negligent misrepresentation requires a plaintiff allege: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; . . . (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."[55] Negligent misrepresentation does not require an intent to deceive, and there is disagreement within the Third Circuit whether negligent misrepresentation claims must satisfy Rule 9(b).[56] However, "the majority of decisions . . . have not applied Rule

---

[53] *See Belmont v. MB Inv. Partners, Inc*., 708 F.3d 470, 498 n.33 (3d Cir. 2013) (explaining that Rule 9(b)'s heightened pleading standard applies when a claim under the UTPCPL is based on fraudulent misrepresentations, but not when it is based upon other conduct).

[54] *See Kemezis v. Matthews*, 394 Fed. App'x 956, 958 n.2 (3d Cir. 2010).

[55] *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

[56] *See McLaughlin v. Bayer Corp*., 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016) (quoting *Schmidt v. Ford Motor Co*., 972 F. Supp. 2d 712, 720 n.3 (E.D. Pa. 2013)); *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 656 (E.D. Pa. 2016) ("Courts are split whether Rule 9(b) with heightened pleading requirements for fraud or mistake apply to negligent misrepresentation claims."). *See also Travelers Indem. Co. v. Cephalon, Inc*., 620 Fed. App'x 82, 85 n.3 (3d Cir. 2015) (noting that only claims that sound in fraud must meet Rule 9 standards).

9(b) to negligent misrepresentation cases."[57] Defendant does not identify allegations Plaintiff

makes in the negligent misrepresentation claim that are not required to satisfy the elements of

negligent misrepresentation. The count alleges that Iris represented its containers "were reliable,

durable, of high quality, and safe for pets."[58] It alleges that Iris knew or should have known that

these representations were false, the information was material, Iris made the representations with

the understanding that customers like Plaintiff would rely on them, and that Plaintiff justifiably

and detrimentally relied on the representation.[59]

 Negligent misrepresentation does not require proving all elements of fraud, and this

Court declines to impose heightened requirements that would require a showing of fraud to

succeed on a claim of negligent misrepresentation, which are separate and distinct from the

Complaint's allegations of fraud. Accordingly, the Court evaluates the negligent representation

claim under Rule 8's standard notice pleading requirements.

Negligent misrepresentation focuses on a failure to exercise reasonable care in

communicating information, not on intentional deceit.[60] Iris argues that there was no

misrepresentation of material fact because the marketing language is "general commendatory

language [that] is non-actionable puffery."[61] Puffery is not actionable and is defined as "an

---

[57] *Bors*, 208 F. Supp. 3d at 656. *See also Anderson v. Battersby*, Civil No. 1:23-CV-2021, 2024 WL 3498352, at *5 (M.D. Pa. July 22, 2024) ("[T]he weight of authority suggests that Rule 9(b) does not apply to negligent misrepresentations claims.").

[58] Compl. ¶ 87 [Doc. No. 1].

[59] *Id*. ¶¶ 87–90.

[60] *Id.* at 560 (holding that negligent misrepresentation requires a material misrepresentation, circumstances in which the speaker ought to know of falsity, intent to induce action, justifiable reliance, and resulting injury).

[61] Mem. L. Supp. Mot. to Dismiss at 7 [Doc. No. 11-1].

exaggeration or overstatement expressed in broad, vague, and commendatory language."[62] Statements that a product is generally superior are not actionable.[63]

However, when language is stated in absolute or measurable terms, it is less likely to be puffery.[64] For example, claims that assert a certain performance that can be comparatively rated, claims concerning specific product attributes, and claims subject to measurement are not puffery.[65]

Here, Plaintiff identified specific statements, including that the containers are " 'safer' for pets" and "Keep Paws Out: Keep pets from sneaking a second or even third breakfast with the secure locking latch."[66] These statements are specific allegations that are capable of falsification and are actionable. Describing the containers as " 'safer' for pets" necessarily compares the container and its latching mechanism to Iris's competitors. Noting that the container will "Keep Paws Out" makes a specific claim about a feature of the container—that pets' paws will be kept out of the container. More specifically, the statement states that the container will "[k]eep pets from sneaking [food stored in the container] with the secure locking latch."[67] The latch is identified as a specific product attribute that either does or does not keep pets out of the

---

[62] *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 945 (3d Cir. 1993).

[63] *See id.*

[64] *See Fusco v. Uber Techs., Inc.,* No. 17-36, 2018 WL 3618232, at *6–8 (E.D. Pa. July 27, 2018) (holding that general "safe" and "reliable" rideshare statements were puffery, while specific descriptions of safety-screening processes could be actionable if false); *Doe A.F. v. Lyft, Inc.*, No. 23-3990, 2024 WL 3497886, at *8–9 (E.D. Pa. July 19, 2024) (holding that general safety slogans were puffery, but specific statements about safety features and live help were measurable and potentially actionable).

[65] *Castrol Inc.,* 987 F.2d at 946 (citing *Gillette Co. v. Wilkinson Sword, Inc.*, No. 89 Civ. 3686 (KMW), slip op. at 42–43 (S.D.N.Y. Jan. 9, 1991) (performance claim which can be comparatively rated is not puffery); *Toro Co. v. Textron, Inc.*, 499 F. Supp. 241, 249–53, n. 23 (D. Del. 1980) (claims concerning specific product attributes are not puffery.); *In re Bristol-Myers Co.*, 102 F.T.C. 21, 321 (1983), (claims subject to measurement are not puffery). *cert. denied*, 469 U.S. 1189 (1985)).

[66] Compl. ¶¶ 25–26 [Doc. No. 1].

[67] *Id*. ¶ 26.

container. These statements are not mere puffery, and they qualify as misrepresentations based on the Complaint. The advertisement that the container keeps paws out is a misrepresentation because Plaintiff's cat unlocked the latch and got access to the container.[68] The statement that the container is " 'safer' for pets" is a misrepresentation because Iris containers are identified a "particularly dangerous," and "other brands . . . use designs that are considerably safer for pets."[69] The safety of the storage for pet food is material when the container is marketed for that purpose specifically.[70] Based on the allegations in the Complaint, taken as true, Plaintiff adequately alleged a misrepresentation of material fact.

Iris also contests that Plaintiff failed to claim that the misrepresentations were made under circumstances where Iris should have known the falsity of the misrepresentations. Iris claims that the Complaint fails to adequately plead knowledge because the knowledge claim is based on social media posts and a Center for Pet Safety report.[71] However, Defendant relies solely on cases dismissing such claims of knowledge based on the heightened Rule 9(b) pleading standard.[72]

Under Rule 8, the Court must take Plaintiff's factual allegations as true and viewed in the light most favorable to the nonmovant Plaintiff. The complaint identified four reports made on social media of cat deaths relating to the Iris containers.[73] At least three of these reports predated

---

[68] *Id*. ¶¶ 13–14.

[69] Compl. ¶¶ 45–46 [Doc. No. 1].

[70] *See id*. ¶ 24 (Amazon listing describing the container as an "IRIS USA Airtight Dog Food Storage Container").

[71] Mem. L. Supp. Mot. to Dismiss at 8–10 [Doc. No. 11-1].

[72] *See Ivanoff v. Walmart Inc*., 1:20-CV-00896-JPH, 2025 WL 2207924, at •16 (S.D. Ohio Aug. 4, 2025); *Laws v. Husqvarna Group*, Civil Action 22-4588, 2023 WL 1767477, at *3 (E.D. Pa. Feb. 3, 2023); *Smith v. Gen. Motors LLC*, 988 F.3d 873, 884–85 (6th Cir. 2021); *Weske v. Samsung Elecs. Am., Inc.,* 934 F. Supp. 2d 698, 703 (D.N.J. 2013); *Suriaga v. Gen. Elec. Co*., CV1816288ESMAH, 2019 WL 6799613, at *5–6 (D.N.J. Dec. 12, 2019).

[73] Compl. ¶ 39 [Doc. No. 1].

Plaintiff's purchase of the Iris container.[74] Reports on social media of these incidents alone would not be sufficient to state a claim that Iris knew or should have known of the alleged defect in the latching mechanism. However, Plaintiff also alleges that "Iris monitors posts about its products on social media and other forums and many of these consumers report having contacted Iris directly about the" latching mechanism's alleged defect.[75]

Both Plaintiff's purchase and publication of the CPS occurred in March 2025. In the light most favorable to Plaintiff, the Court evaluates the Motion as if the report was published prior to Plaintiff's purchase. While Plaintiff does not specifically allege that Iris knew of the report, she sufficiently alleges facts that support an inference that Iris should have known the risks of its product.

Plaintiff also makes general allegations that Iris "would have conducted prerelease testing specifically related to the latching mechanism, the ability for pets to open it, and the possibility of pets getting trapped inside."[76] This claim, standing alone, would be problematic to establish prerelease knowledge of the alleged defect because it presumes general testing without stating clear factual allegations supporting the presumption that Iris would have taken certain action. However, taking the Complaint as a whole, Plaintiff has adequately pled that Iris should have known about the latching mechanism risks and safety dangers to pets resulting from the latches.

Because the negligent representation claim is evaluated under Rule 8, Plaintiff has sufficiently stated a claim. The Motion to Dismiss will be denied as to Count III.

---

[74] *Id.*

[75] Compl. ¶ 41 [Doc. No. 1].

[76] Compl. ¶ 48 [Doc. No. 1].

### B.  Whether Plaintiff Stated a Claim Under Rule 9(b)

  1.  <u>Common Law Fraud</u>

A claim of common law fraud under Pennsylvania law "consists of six elements: (1)(a) [a] misrepresentation or (b) [a] concealment; (2) [w]hich is material to the transaction at hand; (3) (a) [m]ade with knowledge of its falsity or recklessness as to whether it is true or false (for a misrepresentation), or (b) [c]alculated to deceive (for a concealment); (4) [w]ith the intent of misleading another into relying on it; (5) [j]ustifiable reliance on the misrepresentation; and (6) [a] resulting injury proximately caused by such reliance."[77]

Rule 9(b) requires the plaintiff to "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."[78]

Iris argues that Plaintiff has failed to meet this standard because she has not alleged fraud with specificity.[79] While Plaintiff clearly alleges the content of the misrepresentations, including statements made as part of marketing, she does not specify who made the representations or when, where, or how these representations were made. The Complaint does not identify whether the statements are made on packaging for the container itself, on Iris's website, on Amazon as part of Iris's description of the container, or otherwise. Similarly, the Complaint does not identify when Plaintiff identified these marketing materials or how substantial they were in the various marketing information about the container. The Complaint does not identify a representative of Iris making these statements, the medium in which they are made, or about which containers the representations were made. Nor does the Complaint otherwise inject precision or specificity into the allegation.

---

[77] *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022).

[78] *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

[79] Mem. L. Supp. Mot. to Dismiss at 5–10 [Doc. No. 11-1].

Without pleading this basic "who, what, when, where, and how" information about the alleged fraud,[80] Plaintiff has failed to meet the heightened Rule 9(b) standard for pleading Count II. Iris's Motion to Dismiss Count II will be granted.

2.   UTPCPL

For Count I's allegation of violations of the UTPCPL Plaintiff must meet Rule 9(b)'s standards. As with Count II, Plaintiff has failed to plead with adequate specificity the allegations under Count I. The Complaint does not identify the "who, what, when, where, and how" of the allegations, so Count I fails to meet Rule 9(b)'s heightened pleading requirements. The Motion to Dismiss Count I will be granted.

C.   **Emotional Distress and Consortium Damages**

Finally, Iris moved to dismiss Plaintiff's claims for emotional distress or other consortium-related damages.[81] Plaintiff admits that she cannot recover emotional distress or consortium damages.[82] None of Plaintiff's claims seek such damages, so the Motion to Dismiss will be dismissed as moot as to these claims. To the extent Plaintiff seeks such damages, she will be barred from recovery.

IV.   CONCLUSION

For the reasons stated herein, the Motion to Dismiss will be granted as to Counts I and II, denied as to Count III, and dismissed as moot as to claims of emotional distress or consortium-related damages. An appropriate order will be entered.

---

[80] *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 217 (3d Cir. 2002) (citing *In re Burlington*, 114 F.3d at 1422).

[81] Mot. to Dismiss at 4–5 [Doc. No. 11].

[82] Resp. Opp. Mot. to Dismiss at 3 n.2 [Doc. No. 15].